**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **JOHNA NIVENS**, individually, and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>**TRUSTAGE FINANCIAL GROUP, INC.** and **FIRST FINANCIAL FEDERAL CREDIT UNION**,<br><br>  Defendants. | Case No. _____<br><br><br><u>**CLASS REPRESENTATION**</u><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiff Johna Nivens ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action against TruStage Financial Group, Inc., ("TruStage") and First Financial Federal Credit Union ("First Financial") (collectively, "Defendants"). Plaintiff brings this action by and through er attorneys, and alleges, based upon personal knowledge as to her own actions, and based upon information and belief and reasonable investigation by her counsel as to all other matters, as follows.

## I.      <u>INTRODUCTION</u>

1.      TruStage is a mutual insurance company based in Madison, Wisconsin. It provides financial services to cooperatives, credit unions, and their members.

2.      First Financial is one of TruStage's clients. First Financial is a federally-chartered, member-owned credit union headquartered in Sparks Glencoe, Maryland.

3.      On or about July 15, 2026, TruStage publicly disclosed that it had identified a cybersecurity incident affecting its environment and took its systems offline (the "Data Breach").

4.     On information and belief, the Private Information compromised in the Data Breach included personally identifiable information and financial information (collectively, "Private Information") of the members and customers of TruStage's clients—Plaintiff and Class members.

5.     Because Defendants stored and handled Plaintiff's and Class members' highly sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

6.     On information and belief, the Data Breach resulted from Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which they were entrusted in the course of their customer relationships with Defendants.

7.     Ultimately, Defendants failed to fulfill this obligation, as unauthorized cybercriminals breached TruStage's information systems and databases and stole vast quantities of Private Information belonging to Defendants' customers, including Plaintiff and Class members. The Data Breach—and the successful exfiltration of Private Information—were the direct, proximate, and foreseeable results of multiple failings on the part of both Defendants.

8.     The Data Breach occurred because TruStage failed to implement reasonable security protections to safeguard its information systems and databases. Moreover, before the Data Breach occurred, TruStage failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been made aware of this fact, they would have never provided such information to TruStage or any entity that transacted with TruStage.

9.     In addition, Defendants failed to properly monitor the computer network and systems that housed the Private Information. Had Defendants properly monitored their networks, they would have prevented or mitigated the extent of the Data Breach.

10.     Further, First Financial failed to implement adequate investigating and supervision protocols to ensure that any entity to which it provided its members' Private Information—including TruStage—implemented adequate data security practices sufficient to protect the sensitive Private Information in its possession.

11.     Plaintiff's and Class Members' identities are now at risk because of Defendants' negligent conduct since the Private Information that Defendants collected and maintained is now in the hands of data thieves.

12.     Armed with the Private Information accessed in the Data Breach, criminals can commit a variety of crimes. These crimes include opening new financial accounts in Class Members' names, taking out loans in their names, using their Private Information to obtain government benefits, filing fraudulent tax returns using their Private Information, filing false medical claims, obtaining driver's licenses in their names, and giving false information to police during an arrest.

13.     As a result of Defendants' negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy their contractual, statutory, and common-law obligations, Plaintiff and Class members suffered injuries, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect their Private Information.

14. Accordingly, Plaintiff brings this action on behalf of all those similarly situated to seek relief for the consequences of Defendants' failure to reasonably safeguard Plaintiff's and Class members' Private Information and for Defendants' failure to inform Plaintiff and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.    PARTIES

### Plaintiff Johna Nivens

15. Plaintiff Johna Nivens is and at all times was a resident of Owings Mill, Maryland.

### Defendant TruStage Financial Group, Inc.

16. Defendant TruStage Financial Group, Inc. is an Iowa corporation with its principal place of business at 5910 Mineral Point Road, Madison, Wisconsin 53705. TruStage conducts business in this District and throughout the United States.

### Defendant First Financial Federal Credit Union

17. Defendant First Financial is a federally chartered, member-owned credit union with its principal office at 72 Loveton Circle, Sparks Glencoe, Maryland 21152.

## III.    JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendants. This Court also has

4

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

19.    This Court has personal jurisdiction over Defendants because Defendant TruStage maintains its principal place of business in this District, regularly conducts and solicits business in this District and throughout the United States, and has purposefully availed itself of the privileges of conducting business in this forum; and because the wrongful conduct giving rise to this action, including the Data Breach of TruStage's systems, occurred in substantial part within this District. Defendant First Financial purposefully availed itself of this forum by entrusting Class Members' Private Information to TruStage in this District. Further, this Court has personal jurisdiction over First Financial because Plaintiff's claims arise out of First Financial's conduct with TruStage, which occurred in this District.

20.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District and because Defendant TruStage resides in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    TruStage and First Financial – Background

21.    Defendant TruStage Financial Group, Inc. is an insurance, investment, and technology company headquartered in Madison, Wisconsin, that provides insurance, lending-protection, and financial-services products to credit unions and, through them, to their members throughout the United States, including life insurance, accidental death and dismemberment coverage, guaranteed asset protection (GAP), mechanical repair coverage, and payment- and debt-protection products.[1]

---

[1] *About Us*, TruStage, https://www.trustage.com/about-us (last visited July 20, 2026).

22. First Financial is a federally-chartered, member-owned financial cooperative Maryland, serving the employees, students, and parents of the Baltimore, Carroll, Cecil, Accomack, Somerset and Worcester County Public School systems, as well as the employees and families of many Maryland businesses, hospitals, private schools and colleges. First Financial provides a broad array of banking and lending products and services, including personal checking and savings accounts, retirement accounts, consumer and vehicle loans, mortgages, and related member services.[2]

23. On information and belief, First Financial is a customer of TruStage, utilizes Trustage's products and services, provides TruStage products and services to First Financial's customers, and provided its members' Private Information, including Plaintiff's, to TruStage.

24. As part of providing services and its general business operations, First Financial collects, maintains, and stores large volumes of Private Information belonging to its current, former and prospective members. Each First Financial member, including Plaintiff, must provide First Financial with their sensitive, personal and private information, including, but not limited to their names, addresses, telephone numbers, dates of birth, Social Security numbers, driver's license numbers, and financial account information.

25. First Financial, in turn, provided its members' Private Information to TruStage as part of the business relationship between Defendants.

26. By accepting and maintaining Plaintiff's and Class members' sensitive and confidential Private Information, Defendants agreed to and undertook legal duties to protect the Private Information entrusted safely, confidentially, and in compliance with all applicable laws.

---

[2] Bank, First Financial, https://www.firstfinancial.org/bank/ (last visited July 20, 2026) and Borrow, First Financial, https://www.firstfinancial.org/borrow/ (last visited July 20, 2026).

27.     Members and customers of TruStage's clients, such as Plaintiff and Class members, made their Private Information available with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

28.     This expectation was objectively reasonable and based on an obligation imposed on Defendants by statute, regulations, industrial custom, and standards of general due care.

29.     Unfortunately for Plaintiff and Class members, Defendants failed to carry out their duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiff and Class members from having their Private Information accessed and stolen during the Data Breach.

30.     Upon information and belief, Defendants failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing the Private Information of TruStage's clients' members and customers—Plaintiff and Class members.

**B.    The Data Breach**

31.     On or about July 15, 2026, TruStage publicly disclosed cybercriminals breached its information systems and had taken its network offline.[3]

32.     Upon information and belief, the Private Information accessed included at least Plaintiff's and Class Members' names, contact information, dates of birth, Social Security numbers, and financial account information, among other highly sensitive data.[4]

---

[3] Information on our cybersecurity incident, TruStage, https://www.trustage.com/newsroom/2026-press-releases/cybersecurity-incident-update (last updated July 16, 2026; last visited July 20, 2026).
[4] *Id.*

33. While TruStage has acknowledged the Data Breach through a post on its website, it has not yet directly notified victims of the Data Breach.

34. First Financial has not yet publicly acknowledged the Data Breach.

35. Despite Defendants' opacity about the root cause of this incident, several facts may be gleaned from TruStage's public disclosures and the circumstances of the Data Breach, including: a) that this Data Breach was the work of cybercriminals; b) that the cybercriminals infiltrated TruStage's networks and systems and downloaded data from those networks and systems (i.e., exfiltrated data, or in layperson's terms "stole" data); and c) that once inside TruStage's networks and systems, the cybercriminals targeted information including Plaintiff's and Class Members' names, Social Security numbers, dates of birth, and financial account information, and other sensitive information for download and theft.

36. On information and belief, Plaintiff's and the Class members' Private Information, is currently available on the dark web for public viewing and use, in the public domain, to be sold and utilized for fraudulent and criminal misuse, as is the *modus operandi* of cybersecurity incidents of this nature.

C. **Defendants' Many Failures Both Prior to and Following the Breach**

37. Defendants collect and maintain vast quantities of Private Information belonging to Plaintiff and Class members as part of their normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendants.

38. First, TruStage inexcusably failed to implement reasonable security protections to safeguard its information systems and databases.

39. Second, TruStage failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been aware that TruStage did not have

8

adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to TruStage, or would have prevented their Private Information from being provided to TruStage.

40.    Third, First Financial failed to adequately investigate and supervise TruStage to ensure that any entity that had access to its members' Private Information implemented adequate data security procedures.

41.    In addition to the failures that led to the successful breach, Defendants' failings in handling the breach and responding to the incident exacerbated the resulting harm to the Plaintiff and Class members.

42.    During the period between the attack and TruStage's discovery, the cybercriminals who stole this Private Information could freely monetize, misuse and/or disseminate that Private Information before the Plaintiff and Class members could take any affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

43.    In short, Defendants' myriad failures, including the failure to timely detect an intrusion and failure to timely notify Plaintiff and Class members that their personal information had been stolen due to Defendants' security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiff's and Class members' Private Information.

**D.    Data Breaches Pose Significant Threats**

44.    Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, and Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

45.    The Identity Theft Resource Center's ("ITRC") Annual End-of-Year Data Breach Report for 2024 listed 3,158 total compromises, for which 1,350,835,988 individual victim notices were dispatched.[5] This is just 57 breaches short of 2023's record-breaking total of 3,205 data breaches.[6] But the astronomical figure of 1,350,835,988 victim notices represents a 211% increase over 2023's 353,027,892 victim notices, primarily due to five "mega-breaches" (breaches involving at least 100 million victims) which took place in 2024.[7]

46.    Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 3,205 in 2023.[8] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 1.35 billion in 2024.[9]

---

[5] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/publication/2024-data-breach-report/.

[6] *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[7] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/publication/2024-data-breach-report/; *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[8] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2024*, Statista (Updated May 23, 2025), available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed.

[9] *Id.*



Figure 1 – *Number of Data Breaches and Affected Individuals from 2005 to 2024.* [10]

47.    This stolen PII is then routinely traded on dark web black markets as a simple commodity, with online banking login information costing an average of $100, full credit card details and associated details costing between $10 and $100, and comprehensive data packages enabling complete identity theft selling for $1,000.[11]

48.    In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your

---

[10] *Id.*

[11] Ryan Smith, *Revealed-how much is personal information worth on the dark web?*, Insurance News (May 1, 2023), available at https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx.

> good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[12]

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[13]

49. Further, as data breaches become ever more prevalent and as technology advances, computer programs can scan the internet to create a mosaic of information that could be used to link compromised information to an individual in ways in a phenomenon known as the "mosaic effect." By and through this process, names, dates of birth, and contact information such as telephone numbers and email addresses, hackers and identity thieves can access users' other accounts by, for example, bypassing security questions and 2FA security with the comprehensive collection of information at their disposal.

50. Thus, because of this effect, cybercriminals and other unauthorized parties could use Plaintiff's and Class Members' Private Information to access, inter alia, email accounts and

---

[12] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.

[13] *Id.*

financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members, even when that specific category of information is not compromised in a given breach.

51. A particularly trouble example of this effect is the development of "Fullz" packages. A "Fullz" packages is a dosser of information that cybercriminals and other unauthorized parties can assemble by cross-referencing the Private Information compromised in a given data breach to publicly available data or data compromised in other data breaches. Automated programs can and are routinely used to create these dossiers and they typically represent an alarmingly accurate and complete profile of a given individual.

52. Therefore, through the use of these "Fullz" packages, stolen Private Information from this Data Breach can be easily linked to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. Thus, even if certain information such as emails, phone numbers, or credit card or financial account were not compromised in this Data Breach, criminals can easily create a Fullz package to sell for profit.

53. Upon information and belief, this has already transpired (and will continue to transpire) for Plaintiff and the Class. And any reasonable for any trier of fact will find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

54. Despite the prevalence of public announcements of data breach and data security compromises, Defendants' own acknowledgment of the risks posed by data breaches, and Defendants' own acknowledgment of their duties to keep Private Information private and secure, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from misappropriation. As a result, the injuries to Plaintiff and Class members were

13

directly and proximately caused by Defendants' failures to implement or maintain adequate data security measures for their customers.

**E.      Defendants Had a Duty and Obligation to Protect Private Information**

55.      Defendants have an obligation to protect the Private Information belonging to Plaintiff and Class members. This obligation was mandated by government regulations and state laws, including FTC rules and regulations. Plaintiff and Class members provided, and Defendants obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.      FTC Act Requirements and Violations**

56.      The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

57.      In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[14] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and

---

[14] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed August 15, 2023).

implement policies to correct security problems.[15] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[16] Defendants clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

58.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

59.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

60.    As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

61.    Defendants were fully aware of their obligation to protect the Private Information of customers, including Plaintiff and Class members. Defendants are sophisticated and

---

[15] *Id.*

[16] *Id.*

technologically savvy businesses that rely extensively on technology systems and networks to maintain their practice, including storing their customers' and members' Private Information in order to operate their businesses.

62.     Defendants had and continue to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendants and Plaintiff and Class members. Defendants alone had the exclusive ability to implement adequate security measures to their cyber security network to secure and protect Plaintiff's and Class members' Private Information.

### 2.     Industry Standards and Noncompliance

63.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

64.     Some industry best practices that should be implemented by businesses dealing with sensitive Private Information, like Defendants, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

65.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training

16

staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

66.     Defendants should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

67.     Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### 4.     **Plaintiff and the Class Suffered Harm Resulting from the Data Breach**

68.     Like any data hack, the Data Breach presents major problems for all affected.[17]

69.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[18]

70.     The ramifications of Defendants' failure to properly secure Plaintiff's and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

---

[17] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.
[18] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

71.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

72.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

73.     Accordingly, Defendants' wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[19] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[20]

74.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

75.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[21]

---

[19] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.
[20] *Id.*
[21] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymB hAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_B wE&gclsrc=aw.ds.

76.     Here, due to the Breach, Plaintiff and Class members have been exposed to injuries that include, but are not limited to:

    a.     Theft of Private Information;

    b.     Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

    c.     Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

    d.     Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendants' delay in disseminating notice;

    e.     The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

    f.     The loss of Plaintiff's and Class members' privacy.

77.     Plaintiff and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals.

78.     As a direct and proximate result of Defendants' acts and omissions in failing to protect and secure Private Information, Plaintiff and Class members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

79.     Plaintiff retains an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both herself and similarly situated individuals whose Private Information was accessed in the Data Breach.

## G.    **EXPERIENCES SPECIFIC TO PLAINTIFF**

### *Plaintiff Nivens*

80.     Plaintiff Nivens was a customer of First Financial.

81.     Plaintiff provided her Private Information to First Financial as a condition of her membership and of obtaining financial services from First Financial. First Financial, in turn, provided or made Plaintiff's Private Information accessible to TruStage, its third-party service provider.

82.     On information and belief, Plaintiff Niven's Private Information was improperly accessed and obtained by third parties.

83.     After the Data Breach, Plaintiff Nivens experienced a dramatic increase in spam phone calls, text messages, and emails.

84.     As a result of the Data Breach, Plaintiff Nivens has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Nivens has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

85.     As a result of the Data Breach, Plaintiff Nivens has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her Private Information for purposes of identity theft and fraud. Plaintiff Nivens is

concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

86.     Plaintiff Nivens suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of property that Defendants obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

87.     As a result of the Data Breach, Nivens anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.     CLASS REPRESENTATION ALLEGATIONS

88.     Plaintiff brings this action on behalf of herself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendants, their executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

89.     Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. On information and belief, the number of affected individuals estimated to be hundreds of thousands of individuals.  The members of the

Class will be identifiable through information and records in Defendants' possession, custody, and control.

90.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.   When Defendants learned of the Data Breach;

b.   Whether hackers obtained Class members' Private Information via the Data Breach;

c.   Whether Defendants' response to the Data Breach was adequate;

d.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e.   Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

f.   Whether Defendants owed a duty to safeguard their Private Information;

g.   Whether Defendants breached their duty to safeguard Private Information;

h.   Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

i.   Whether Defendants breached the duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

j.   Whether Defendants' conduct violated the FTCA;

k.   Whether Defendants' conduct was negligent;

l.   Whether Defendants' conduct was *per se* negligent;

m.   Whether Defendants was unjustly enriched;

n.   What damages Plaintiff and Class members suffered as a result of Defendants' misconduct;

        o.      Whether Plaintiff and Class members are entitled to actual and/or statutory damages; and

        p.      Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief.

91.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class as Plaintiff and all members of the Class had their Private Information compromised in the Data Breach. Plaintiff's claims and damages are also typical of the Class because they resulted from Defendants' uniform wrongful conduct. Likewise, the relief to which Plaintiff are entitled to is typical of the Class because Defendants acted, and refused to act, on grounds generally applicable to the Class.

92.    <u>Adequacy</u>: Plaintiff is an adequate class representative because her interests do not materially or irreconcilably conflict with the interests of the Class she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor her counsel have any interests that are antagonistic to the interests of other members of the Class.

93.    <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records and databases.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(By Plaintiff on behalf of the Class)**

94.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

95.    Defendants owe a duty of care to protect the Private Information belonging to Plaintiff and Class members. Defendants also owe several specific duties including, but not limited to, the duty:

   a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

   b.    to protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

   c.    to have procedures in place to detect the loss or unauthorized dissemination of Private Information in their possession;

   d.    to employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class members pursuant to the FTCA;

   e.    to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

   f.    to promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

96.    Defendants owe this duty because it had a special relationship with Plaintiff's and Class members. Plaintiff and Class members entrusted their Private Information to Defendants on the understanding that adequate security precautions would be taken to protect this information.

Furthermore, only Defendants had the ability to protect their systems and the Private Information stored on them from attack.

97. Defendants also owe this duty because industry standards mandate that Defendants protect their customers' confidential Private Information.

98. Defendants also owe a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiff and Class members. This duty exists to provide Plaintiff and Class members with the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

99. Defendants breached the duties owed to Plaintiff and Class members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their Private Information.

100. Defendants also breached the duties owed to Plaintiff and Class members by failing to timely and accurately disclose to them that their Private Information had been improperly acquired and/or accessed.

101. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and

- Permanent increased risk of identity theft.

102.    Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendants and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

103.    In failing to provide prompt and adequate individual notice of the Data Breach, Defendants also acted with reckless disregard for the rights of Plaintiff and Class members.

104.    Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT II
## NEGLIGENCE *PER SE*
### (By Plaintiff on behalf of the Class)

105.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

106.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendants to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiff and Class members.

107.    Defendants violated the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiff's and Class members' Private Information.

108.    Defendants' failure to comply with the FTCA constitutes negligence *per se*.

109.    Plaintiff and Class members are within the class of persons that the FTCA intended to protect.

110.    It was reasonably foreseeable that the failure to protect and secure Plaintiff's and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

111.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

112.    Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (By Plaintiff on behalf of the Class)

113.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

114.    Plaintiff and Class members provided Defendants with their Private Information.

115.    By providing their Private Information, and upon Defendants' acceptance of this information, Plaintiff and the Class, on one hand, and Defendants, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

116.    The implied contracts between Defendants and Plaintiff and Class members obligated Defendants to take reasonable steps to secure, protect, safeguard, and keep confidential

Plaintiff's and Class members' Private Information. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above.

117. The implied contracts for data security also obligated Defendants to provide Plaintiff and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

118. Defendants breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiff and Class members; allowing unauthorized persons to access Plaintiff's and Class members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiff and Class members, as alleged above.

119. As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiff and Class members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of Private Information, and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiff on behalf of the Class)**

120. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

121. This count is brought in the alternative to Count III.

122. Plaintiff and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendants.

123. Plaintiff and the Class conferred their Private Information to Defendants as part of receiving financial services. Plaintiff and the Class also conferred payment to Defendants in exchange for services.

124. Plaintiff and Class members conferred their Private Information alongside payment with the understanding that the payment was, in part, to be used to implement data security sufficient to adequately protect their Private Information. And this payment represented a benefit that was to be used for a specific purpose.

125. TruStage is a sophisticated entity that provides services to many credit unions and financial institutions, received payment to handle and manage this Private Information.

126. First Financial is a sophisticated financial institution that provides financial services to many thousands of individuals, and received payment from its members to handle and manage their Private Information.

127. Plaintiff and Class members conferral of their Private Information was a direct benefit since Defendants were able to use this information for business purposes and financial gain. There was an understanding that a portion of the monies Defendants received from the use of this Private Information, was intended to be used to implement data security sufficient to adequately protect this Private Information.

128. Defendants understood that they were so benefitted.

129. However, instead of providing a reasonable level of security, training, protocols, and other measures that would have prevented the Data Breach, as described in detail above, Defendants, upon information and belief, knowingly and opportunistically elected to increase their own profits at the expense of Plaintiff and Class members by not expending the money required to do so.

130. And in failing to expend the monies conferred with the express understanding that it would be used on data security, Defendants knowingly and deliberately enriched themselves at the expense of Plaintiff and Class members.

131. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits received, and are still receiving, without justification, from Plaintiff and Class members in an unfair and unconscionable manner.

132. Defendants are therefore liable to Plaintiff and the Class for restitution in the amount of the benefit conferred on Defendants as a result of their wrongful conduct, including specifically the value to Defendants of the Private Information that was accessed and exfiltrated in the Data Breach and the profits Defendants received from the use and sale of that information. Plaintiff and Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## COUNT V
## BREACH OF FIDUCIARY DUTY
### (By Plaintiff on behalf of the Class)

133. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

134. Plaintiff brings this claim on behalf of themselves and the Class.

135. Plaintiff and Class members provided their Private Information to Defendants in confidence with the reasonable belief that Defendants would protect their information. Plaintiff and Class members would not have provided their information to Defendants had they known they would fail to adequately protect their information.

136. In collecting and maintaining this Private Information, Defendants created a fiduciary relationship between themselves and Plaintiff and Class members. As such, Defendants owed a duty to *primarily* act for the benefit of their customers upon matters within the scope of their relationship. This included a duty to protect Plaintiff's and Class Members' Private Information.

137.    Defendants breached these fiduciary duties by failing to implement adequate safeguards and causing Plaintiff's and Class members' Private Information to be disclosed to unauthorized third parties. Defendants further breached these fiduciary duties by contracting or otherwise doing business with companies that similarly failed to implement adequate safeguards, and sharing Plaintiff and Class members' Private Information with these entities.

138.    As a direct and proximate result of Defendants' breaches of their fiduciary duties and the resulting disclosure of Plaintiff and Class member's Private Information, Plaintiff and Class members have suffered damages, including, but not limited to exposure to heightened future risk of identity theft, loss of privacy, confidentiality, and emotional distress. humiliation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all members of the Class, respectfully requests that the Court enter judgment in her favor and against Defendants, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

B.    That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.    That the Court award Plaintiff and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

D.    That the Court award Plaintiff and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

E.    That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

F.    That the Court award pre- and post-judgment interest at the maximum legal rate;

G.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

H.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the putative Class, demand a trial by jury on all issues so triable.

Date: July 21, 2026                                    Respectfully Submitted,

                                                        /s/ *Nickolas J. Hagman*
                                                        Nickolas J. Hagman (Wis. Bar No. 1085424)
                                                        **CAFFERTY CLOBES MERIWETHER &**
                                                        **SPRENGEL LLP**
                                                        135 S. LaSalle, Suite 3210
                                                        Chicago, IL 60603
                                                        Tel.: 312.782.4880
                                                        nhagman@caffertyclobes.com

                                                        *Attorneys for Plaintiff and the Proposed Class*